The court of Illinois has convened. Good morning. Please be seated. The first case this morning is case number 4-16-0416. We're at the Estate of Krik. Appearing for the appellant is attorney Nicholas Tinsman. And for the appellee is attorney Donald Parkinson. Counsel, are you ready to proceed? You may. May it please the court. My name is Nicholas N. Tinsman, counsel for Philip E. Dawson, the petitioner and appellant in this matter. And this appeal stems from the trial court's granting of a motion to dismiss the petition for guardianship of an alleged disabled adult. The motion to involuntarily dismiss was granted pursuant to 2619 of the Code of Civil Procedure, specifically that other affirmative matter existed which would defeat the allegations of the petition. The petitioner is arguing on appeal that the granting of the motion to dismiss was an error and that this court should reverse and remand on two specific grounds. The first issue is that the trial court erred in dismissing the petition based on other affirmative matter when no such affirmative matter existed in this case. And second, that the trial court erred in failing to order the referral evaluation that was requested by the initial evaluating physician. So what we're asking the court to, the rule we're asking the court to adopt in this case, is that the lack of a complete physician's report is not in and of itself sufficient matter that's contemplated by 2619 of the Code. And additionally, that the report of the GAL in an adult guardianship case cannot serve as the basis for a 2619 dismissal as well. Secondly... health professionals report that would fill in the gaps that currently exist. Is it your position that that's simply a matter of production of evidence at the time of the evidentiary hearing and that you could proceed given the state of the record and that that is not an impediment such that the petition should be dismissed pursuant to 2615? To answer your question, I would agree that additional evidence would need to be procured in some fashion. Other case law suggests, and I was anticipating requesting discovery of some sort, maybe a deposition of the initial treating physician if we could not get the referral evaluation. But my second point goes right along with that. And that's that 1189 of the Probate Act contemplates the possibility of multiple evaluations being necessary, despite the fact that there's not a lot of case law or any case law, to be quite honest, where I can find the situation that we find ourselves in here where one physician, for whatever reason, declined to make a definitive evaluation as to guardianship, but rather referred on his own to another specialist who specializes in Alzheimer's and diseases of that kind. And so my hope would be, and the second thing we're asking the court to do, is to reverse the trial court on the issue of failing to order the referral, which would, I believe, provide us with ample evidence to surpass a 2615 motion. And I do understand the second part of your request here, but I just want clarification, and I'll ask this of Mr. Parkinson during his time, that if we were to find that the dismissal was inappropriate, but that the denial of the request for a second examination by a different physician, if that denial was appropriate, going forward, it would simply be a matter of petitioner's burden of production that we're talking about here. Petitioner could subpoena a medical witness to provide all of the information that's contemplated in the statute? I agree with that. That's correct, Your Honor. I believe that a discovery deposition or an evidentiary deposition has been handed down in these cases before allowing discovery depositions of the, or I'm sorry, evidentiary depositions of the evaluating physician in order to elicit additional testimony. I think the Silverman case, if I recall right, was an example of that, where Dr. Goldstein in that case was deposed in greater detail in an attempt to elicit information that was not in his evaluation report. So that would be the process going forward. On the issue of other affirmative matter, there's no question that Dr. Riskin's report is incomplete, but it is not completely irrelevant at the same time. We do find ourselves in unusual circumstances, I already alluded to, where an evaluating physician declines to make a specific statement as to the necessity of a guardianship. However, Dr. Riskin's report does discuss a litany of the respondent's shortcomings in her mental examination. Although he does not provide any recommendations of any kind, he did not state that a guardianship was unnecessary. He did not state that a guardianship was necessary. He made no diagnosis. He did state, based on my examination, the nature and type of Eileen Kirk's disability is not known to me. After he said a few other things, he says, I do want to refer her to a Dr. Lano for additional neuropsychometric evaluations. And we're arguing that this referral cannot be disregarded as something that's insignificant. We feel like it is a significant statement by Dr. Riskin, and it should be one that the court should at least recognize and consider. Now, the only affirmative matter that has been presented in this case are two documents, Dr. Syed's letter of four sentences in total and Mr. Hensley's GAL report. And the court stated in her order, or on the record at least, that she relied on Dr. Syed's letter and in connection with the GAL report to substantiate the 2619 dismissal. However, further in the order, as it was stated in the statement of facts, the trial court here specifically stated that Dr. Syed's letter is not a report that would be upheld under 1189 standards of the Probate Act. It is not the type of report that one could obtain a guardianship with. And she specifically said that she feels like she needs more to hang her hat on than that letter. But in the end, that was the only thing that she had to hang her hat on. And that's what she did. She relied on Dr. Syed's letter. However, we have absolutely no information regarding the background of this letter, why was it written, who was this letter written for. There's no specification in that letter about guardianship. It's not even known if Dr. Syed knew that this letter was being produced for the purposes of a guardianship matter. And as I said, the trial court expressly stated on the record that this letter was not an 1189 report. And then you have the GAL report. And the GAL report makes a significant statement that he finds, in his opinion, that the respondent is a disabled person as defined by the statute. But then he goes on to make a very important factual determination that I don't think is appropriate, that despite her legal disability, she's not in need of a guardianship. Because everything, in his opinion, appears to be unbroken. And she's just fine the way she is. And I think the trial court, relying on the GAL's report to get to a factual determination of whether a guardianship is needed after a legal determination has been made that a person is a legally disabled adult was improper. And to rely on his factual determination in dismissing it pursuant to 2619 was improper. In the motion to dismiss at the trial court, the respondent relies on the estate of Silverman as its most significant case. And that case, along with the estate of Hanley, basically say that if a petition lacks a physician's report, a physician's evaluation is not necessarily required when the respondent comes forward with a proper 1189 report that the court can rely on. And that report must state that the respondent is not in need of a guardianship. And in those instances, I think it's wholly appropriate for the trial court to rely on that proper 1189 report. What is the recourse for a respondent where the 1189 report submitted by the petitioner is lacking in some way? The Probate Act has the 1189 section B-5, which says upon request of the respondent or on the court's own motion, the court can order an independent evaluation of the respondent. And so in that instance, I think if the respondent felt like the petitioner's report was improper, they would make the same motion essentially that I made under the next subsection, saying we want to get a report that refutes the petitioner's report, and that's contemplated by the statute. But are you saying that dismissal is never an option where the 1189 report is substantially lacking? I think it's possible a dismissal under 2615 might be appropriate. And so what did the trial court have to say about the 2615 portion of the motion here? In this case, the trial court stated on the record that it was not well taken and that a cause of action had been properly pled. And because of that, 2615 was not an appropriate dismissal. Is that a correct assessment? I think it was properly pled. There's no question that we're missing the physician's report to attach to it because we're dealing with an involuntary guardianship in this instance, and we could not compel the respondent to do so without a court order. But as far as making a, from a pleading standpoint, absent the 1189 report, everything else in the trial court agreed was sufficiently pled factually under the statute. So the Silverman case, and again in the respondent's motion to dismiss at the trial level, the estate of Cole was also referenced. And again in that case, there were two doctors that were submitting reports, but they were the respondent's reports that were provided to refute the petition that did not contain a report. So we're not dealing with Silverman or Hanley or Cole here. The respondent has not brought forth an 1189 report that fits in with any of the categories referenced in those case laws. We have a four-sentence letter from Dr. Syed, as I mentioned before, which has its issues that the trial court even stated on the record. It is not an 1189 report, and an affirmative matter can't be the lack of affirmative matter. I think under 2619 it must be truly affirmative. Here's a document, here's evidence that refutes or defeats the petition. 2619 doesn't say the petition is not sufficient, and that's affirmative matter. That's a 2615 dismissal. And we argued against both at the trial court. I understand your argument as to 2619, and my concerns relate more to the 2615 portion of the motion. And the interplay between the petition and the report itself. In the report, the statute requires certain things to be included within the report. You're indicating that the petition was adequate because it sufficiently pled what the report requires in terms of the alleged disabled person's inability to conduct her affairs and so forth. The report requires that opinion be contained within it, and when it does not, you're saying it doesn't matter in terms of the viability of the petition. The petitioner can go forward. Well, I'm saying that 1189 provides for the petitioner to obtain a proper physician's evaluation. If Dr. Riskin in this case had said no guardianship is needed, that would have been the end of this case. If he had said a guardianship is needed, then we wouldn't be here either. But in this case, we're in an unusual, possibly first impression where a doctor says, I make no recommendations whatsoever. I would prefer to have this individual, who's a specialist in Alzheimer's diseases, make the specific determination. Although Dr. Riskin himself is the head of neurology at a very large hospital in Champaign, and his bio states that he specializes in making determinations as to Alzheimer's and brain-related diseases. So when we contacted his office, his office said, absolutely. We do this. This is what we do on a regular basis. We were constrained by the trial court to find somebody in that geographic location, so we did. We didn't know any of the doctors. We called. We asked. They said, yes, we do that. I realize now the trial court says, you know, you could have made a motion for a different doctor. You could have made a motion for additional time. Unfortunately, I wouldn't know to make those motions until after the report was received that says, I make no determination. I didn't have any way of knowing that that result would come. I anticipated guardianship as needed or a recommendation that no guardianship is needed, and that would have ended the case on 2619 or 2615 either way. If he said no guardianship is needed, then I think 2615 is the proper motion to make because the pleadings are insufficient. There's no report. And at that point, I would agree. I'm not entitled to go get as many doctors as I can get in order to get the report I'm looking for. But in this case, I'm just asking that the doctor who made the referral should be listened to and grant the referral so that we can obtain the report that we requested under 11A9. Can you just walk us through the chronology of the petition being filed and at what point the report is secured relative to the filing date? The filing date, Your Honor, if I may, I know that the physician's report was drafted in October of 15. Let me verify. Okay. Yeah, it was drafted in October of 2015, filed with the court November 23rd of 2015, which if I recall was the date that we were supposed to come back to court for a status on that physician's report. And I obtained the physician's report in open court at the trial court level. I'm sorry. So the guardianship petition was filed November 4th of 2014. That's correct. When was the report secured? The report was filed November 23rd of 2015. We went through a number of, a series of motions to dismiss this case before on the basis of Dr. Syed's letter that it was an insufficient pleading and the trial court denied that motion in the first instance and ordered the evaluation to take place. And then once we selected the evaluator, there was a motion to an objection to that selection, which caused an additional delay. We had to have hearings on the objection. They were denied by the trial court. And then the scheduling of it with Dr. Riskin created a little bit of an additional delay. And so he met with her on October 21st for the first time, approximately a year after we'd filed the petition. So there was just one delay after another. Now we've got the report, and like I said, it states right in there that I declined to make an evaluation as to the need for guardianship, but I would prefer this neuropsychometric analysis by a specialist, Dr. Lano at the University of Illinois in Champaign, which Dr. Lano, as I mentioned in the arguments, was not an option for us because he was not within the three hospital systems that the court ordered us to select a doctor in. He's a specialist at the University of Illinois. I didn't know about him. He wasn't in any of the documentation. And because he was a specialist, I don't think we could have just gone directly to him anyway without a referral from Dr. Riskin. And then briefly on the multiple evaluations, as I said, 11A9B of the statute states that the court shall order appropriate evaluations, plural, to be performed by qualified person or persons. And then in B5, where it's the mechanism by which the respondent can request a court-ordered examination, the court shall appoint one or more independent experts to examine the respondent. And so I think that's an appropriate action on the trial court's level as well. So just in conclusion, Your Honors, we have Dr. Syed's letter, we have Dr. Riskin's referral, and a GAL report. Those are the only documents that were submitted to the court for a 2619 motion to dismiss. The letter was insufficient under 11A9 standards. The GAL report, as I stated, makes a factual determination that despite the legal disability, no guardianship is needed in my opinion, which is a factual determination. I believe my time is up. All right, thank you. Counsel? Please, the court. My name is Donald Parkinson. I represent the respondent in these proceedings. First of all, I'll state that the court here is called upon to make a de novo review of the trial court letter. You just decided, Justice Steigman, actually the Vantage Hospitality case on a 2619 motion December 28th of last year, and you ruled that's what the basis of this is. So I just want to point that out because that's what I think the current law is. In terms of the petition in this case, we filed, to begin with, when it was filed back in November of 2014, a motion to dismiss it saying it didn't state anything on its fact. It was insufficient at that point. The trial court denied it. But if you look at the petition filed, it gives absolutely no specifics about dates, times, places, or anything else. When you look at the GAL report that was filed later after he talked to Philip Dawson here, who filed the petition in this matter, Mr. Dawson was talking about the fact that he's concerned about trust, that money was being taken out of an account, that there wasn't finances there. He thought there was irregularities that he complained about, none of which the GAL could find any support for that in the documents. He went through the documents. As a matter of fact, as part of his report, he talks about the fact that when he went through the documents, he found multiple loans during the time when Philip was acting as the power of attorney for his mother, that loans were taken out by him and then no proof of any repayment of any of those loans whatsoever. And we had to request for them because they filed a petition without any report at all. Which is allowable. Which is allowable. But they wanted her to go to Chicago or St. Louis or something else. And Judge Clemons said this is a 94-at-that-point-year-old lady, and she doesn't need to be making trips for six, seven hours places, a round trip or overnight or whatever else she'd have to do for those places. We've got doctors all over the place in Champaign-Urbana. You can pick out one of those doctors that you want to go to. I just heard the counsel say there's another one that he didn't know about, that it didn't exist or anything else. We made no selection of the doctor that he picked there, Dr. Reston. That was his choice. He gave it to the judge and said that's who I wanted it to be. Here in this matter we made arrangements to get her over there so she could be interviewed by Dr. Reston. And contrary to what he suggested to you here, Dr. Reston actually says as part of his report there, her adoptive behavior appears to be appropriate given the constraints of her age and physical condition. She has normal social skills. That's part of his report there. Not finding that she's a disabled person or needs to have somebody overlooking her. The GAL report was already on file before the court at that point also. It went out, did interviews of her, found that her place was appropriate, that she was appropriate, she was answering questions, she had some trouble with hearing. It turned out that her hearing aids needed to be updated. And he goes back about six months later and sees that her hearing aids have been updated. She's 95 at that point. And again, he makes no finding that she needs to have any guardianship established for her. Everything is fine. She's getting meals. Her house is there. Her other son, John, who happened to be her power of attorney. Four things anyways have been taking her to doctor's appointments and everything else. I don't think there's any dispute that Dr. Reston's report doesn't touch all the bases in terms of the 11A9 requirements. The question in terms of the 2619A9 dismissal is whether or not you presented material that was affirmative matter that would justify dismissal. And it would seem that you would have to present material establishing that no guardianship was necessary. Now, you have Dr. Sia's letter, right? And you point to that. And the trial court also pointed to that. But that's a letter. It's not an affidavit, right? You would acknowledge that in order to provide affirmative matter, it needs to be of evidentiary quality. It would need to be an affidavit. And you had the statement and report by the private GAL that saw her multiple times and dealt with her that found that no guardianship was required. She didn't need it. That's consistent with the law. You don't order guardianship of people just because they get elderly or something like that automatically. There was no need for that. I think he says in his report, if it's not broken, it doesn't need to be fixing. It's the way that he phrased it at one point in there, Mr. Hensley. And there was no need for her to have any guardianship. She was doing perfectly fine in managing her affairs. And the vague statements by Philip talking about, according to the reports, he hadn't seen her since spring of 2014. Him filing this later about this, saying that she needed guardianship in November of 2014, based upon no specifics to show that as to why that's needed. So I think that that can be positive things in and of itself. You're looking at the allegations he makes. He has the burden of proof there. Just because he files it doesn't shift it to the respondent. He has to make sort of a case to go forward there in the matter. He got to pick the doctor he wanted to pick to have her examinated, who didn't make any determination that she needed guardianship whatsoever. The GAL said she didn't need a guardianship. All those constitute, I believe, affirmative matters consistent with the dismissal that the court rendered. Maybe there's a difficulty in language here. But under 2619, the idea, as this court has explained, it's a yes but motion. Essentially what you're doing by filing it is motion saying, yes, we concede you stated a cause of action, but you lose because of some affirmative matter, such as showing statute of limitations or were immune or something like that. It can't be to contest the underlying allegations within the complaint that you're seeking to dismiss. The appellant has said you didn't identify affirmative matter in this case. You seem to be arguing that the underlying case isn't well taken. What's the affirmative matter, as Justice Harris asked? As far as I'm concerned, the affirmative matter is because there's different sections of 2619 that talks about statute of limitations and other reasons to dismiss it, but under 9 that we're talking about here, the affirmative matter is their expert didn't say that guardianship was required whatsoever, and that's the facts before the court. The GAL said no guardianship needed to be done, that things were fine, you didn't need to have anybody appoint you. Still, that's just the general thing for some affirmative matter. You're still, the whole idea is you're conceding, by following that motion, for purpose of the motion, they've stated a cause of action. And their cause of action is insufficient on its face. That's not a 2619 motion. I respectfully, Your Honor, disagree and say that is one of the things in it that can be the basis of it. But we think the judge was correct in her ruling in that particular case. To dismiss the case as she did, we ask the court to affirm her ruling. Thank you. Thank you. Rebuttal. Thank you, Your Honor. Just briefly, regarding the statements, our initial doctor was in Springfield. I admit that that is a little bit of a drive from Champaign. And I think it's important to note that Dr. Riskin's report says, I do not have an opinion as to the need for the type and scope of guardianship recommended. In no way is he saying that no guardianship is needed. I mean, we don't, I'm assuming physicians at his level do not refer people for additional evaluations for a neuropsychometric analysis when he believes that no guardianship is needed. That referral, I think, speaks volumes. And I think the court has properly indicated that a 2619 cannot attack the sufficiency of the petition. The court, this motion to dismiss, which has been appealed in this case, the ruling, didn't have anything to do with the 2615 motion. It was strictly on 2619, and we would ask the court to reverse it on those grounds. All right. Thank you. Thank you both. The case will be taken under advisement, and a written decision shall issue.